DANIELS *v.* DANIELS.

4-7756                                    190 S. W. 2d 627

Opinion delivered December 3, 1945.

*L. B. Smead* and *Floyd E. Stein,* for appellant.

SMITH, J. A decree was rendered August 13, 1943, in a suit filed by appellee against appellant, who was then her husband, awarding her the custody of their three minor children, two girls and a boy, and requiring him to contribute $33 each week to the support of his wife and children. No divorce was prayed, but appellee later filed an amendment to her complaint in which that relief was prayed and granted, in a decree rendered September 13, 1943. This decree required appellant to pay appellee $33 each week.

Appellant defaulted in seven of these payments, and a citation issued requiring him to show cause why he should not be adjudged in contempt of court. In response to this citation appellant filed a petition for the modification of the order of September 13.

These pleadings were heard January 10, 1944, when it was adjudged that appellant was in default in his payments to the extent of $360, after credit had been given him for certain payments made appellee, and a credit of $201 allowed for money sent his children. Appellant was ordered to pay this deficiency in three equal installments

of $120 each, in 30, 60 and 90 days, and thereafter to pay appellee for the support of the children, the sum of $50, to be paid on the first and 15th day of each month, making $100 a month for the support of the children. It was ordered that these payments be made to the clerk of the court, to be by him remitted to appellee. Jurisdiction was retained for such further orders "as may be necessary and equitable." It was further ordered that, if these payments were not made, the clerk should report the fact to the sheriff. The clerk advised the sheriff "officially" that appellant had made default, whereupon the sheriff arrested appellant and placed him in jail, but released him when $120 was paid.

Appellant appears to have made no further payments, and on March 6, 1944, he was again cited to show cause why he did not comply with the order of the court made January 10, 1944.

In response to this citation appellant filed a motion praying the court to modify the decree rendered September 13, 1943, which awarded the custody of the children to appellee. Appellant filed also a petition for citation against appellee, in which he alleged that she had, without authority, or order of the court, removed, with the children, from this state to the state of Arizona, and prayed the appellee be required to present the children in court on November 24, 1944, and that she be adjudged in contempt of court if she failed to do so. On November 24, 1944, the cause was passed and reset by consent for hearing on January 8, 1945. Hearing was not had on these pleadings, however, until March 25, 1945, at which time the cause was heard upon appellant's petition for change of the custody of the children. Appellee did not appear at this hearing, and it is insisted that for this reason, if for no other, the custody of the children should be awarded appellant, as appellee was in contempt of court in removing the children from this state without a court order permitting her to do so, but the court had made no order requiring the presence of the children in court, or their return to this state.

Appellant offered testimony to the effect that since the decree awarding his wife a divorce, she had refused to allow him to see the children and had taught, and was teaching, the children to forget him. He offered in evidence a number of letters which he had received from his oldest child, a daughter then seventeen years of age, in which she expressed great affection for her father, but made no complaint of her mother save only that she wrote these letters surreptitiously for fear of displeasing her mother. These letters were somewhat artful, as most of them referred to money, which appellant appears to have remitted whenever requested, but the remittances were all for small amounts. Appellant testified that, since the divorce, he had contributed $3,000 to the support of the children, but he offered no evidence to that effect except his statement that he had done so.

Appellant complained also that his youngest daughter had been placed in a catholic school, contrary to his wishes, and that proper supervision of his son was not exercised, in that the son was not required to attend school. A sister of appellant testified that her brother was not allowed to see the children, and another lady testified that, while the son was enrolled in school, he sometimes played "hooky" from school.

Appellant has remarried, and he and his present wife testified that they were willing and anxious to have the custody of the children, and were prepared to give them the proper attention and would do so.

Appellee did not attend the trial when the decree was rendered, from which is this appeal, but she was represented by counsel, but no brief in her behalf has been filed on the appeal.

There was offered, without objection, a certificate from the pastor of a Baptist church in the city of Little Rock, reciting that the children were all enrolled in, and attended the Sunday School of that church. Appellant is of that faith. There was also offered in evidence a certificate of the principal of the school which the son attended in Little Rock reading as follows:

"May 2, 1944,

"Peabody School,

"Capitol and Gaines.

"Hendree W. Means, Principal

"This is to certify that Freddie Daniels' attendance record at Peabody School, shows only one day's absence this term.

"Freddie's conduct has been most satisfactroy and he has proven to be dependable. He is one of our monitors at Peabody.

"If he continues in school, his teacher reports he will be promoted to Junior High School at the end of this term.

"Signed H. W. Means,

"Principal of Peabody School."

The petition for the change of the custody of the children was denied, and from that decree is this appeal, and no other question is discussed in appellant's brief. No reason was assigned by the chancellor for the order made, but we assume that the testimony which related to the environment of the children, if the change of custody were ordered, was controlling. At any rate, it controls our action in affirming the decree.

The testimony is to the effect that appellant operates a night club on the highway from Camden to El Dorado, located about six miles from Camden. Appellant has there two buildings, about 100 feet apart, in one of which he resides with his present wife, while he operates the club in the other. A deputy sheriff testified that, between June 20, 1941, and March 2, 1944, 30 arrests were made in this club on charges ranging from murder to disturbance of the peace, but most frequently for gaming.

Another officer was asked, "what goes on in the dance hall?" and he answered, "they sell beer and drink and dance." Asked about gambling the officer an-

swered, "I feel sure there has been equipment torn up within two or three years, and there have been arrests made there." This is within 100 feet of the place to which appellant proposes to take the children. When asked by appellee's counsel if appellant had tried to operate a peaceable place, the officer answered, "that is the general idea," but he testified that the officers went there only when called.

We think the chancellor was correct in refusing to place the children in this environment, and the decree is, therefore, affirmed.